**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: March 7, 2025
Date Decided: March 31, 2025

Joseph L. Christensen, Esquire
Christensen Law LLC
1201 North Market Street
Suite 1404
Wilmington, DE 19801

Nicholas J. Rohrer, Esquire
Lakshmi A. Muthu, Esquire
Jason W. Rigby, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

RE: *Thomas J. Scaramellino v. Arencibia Holdco, LLC*,
C.A. No. 2024-1174-BWD

Dear Counsel:

In this books and records action, Thomas J. Scaramellino ("Plaintiff") seeks an order compelling Arencibia Holdco, LLC ("Arencibia" or the "Company") to produce formal and informal materials under the Company's unitholders' agreement and Section 18-305 of the Delaware Limited Liability Company Act ("LLC Act"). This letter opinion concludes, post-trial, that the informal materials sought are not "reasonably appropriate to monitor and manage [Plaintiff's] ownership interests in the Company" or otherwise "reasonably request[ed]." It further concludes that, having failed to satisfy statutory form-and-manner requirements by attaching a power of attorney to a demand served by counsel, Plaintiff is not entitled to books and records under Section 18-305 of the LLC Act.

## I.  BACKGROUND[1]

Arencibia is a Delaware limited liability company that "finances, builds, installs and operates large bulk gas recycling systems that are usually designed to recycle industrial gas."[2]  Plaintiff owns 831 "Class B" units of the Company, which, at the time this action was filed, comprised five percent of the Company's units.[3] Beginning in 2020, Plaintiff served as a member of Arencibia's board of directors (the "Board") and as the Company's Senior Vice President of Sales and Business Development, overseeing commercial functions including sales, marketing, and information technology.[4]

The Operating Agreement of Arencibia Holdco, LLC dated February 11, 2022 provides that, "[o]ther than reports and information set forth in Section 21 of the Unitholders' Agreement, Class B and Class C Members shall not be entitled to inspect or copy any Company documents . . . ."[5]  Section 21 of the Unitholders'

---

[1] The facts herein are drawn from the parties' pre-trial order (cited as "PTS ¶ __"), joint trial exhibits (cited as "JX __"), and argument presented at a one-day paper trial held on March 7, 2025.  The trial transcript is cited as "Tr. __."

[2] PTS ¶¶ 5–6; JX 53 § 2.3.

[3] PTS ¶¶ 3–4.

[4] *Id.* ¶ 7.

[5] JX 53 § 7.3.

Agreement of Arencibia Holdco, LLC dated as of February 11, 2022 (the

"Unitholders' Agreement") states that:

> For so long as any Unitholder owns at least five percent (5%) of the then-outstanding Units, such Unitholder shall be entitled to receive regular and suitable business (e.g. sales, marketing and technology), financial and other information reasonably appropriate to monitor and manage its ownership interests in the Company and such other information as it may reasonably request from time to time. The Company shall provide such information to each such Unitholder as promptly as practicable upon it becoming known and available to the Company, but in any event within ten (10) days after it is known and available to the Company. Such information will include the following:

>> (i) notification in writing of any litigation or governmental proceeding in which the Company is involved and which might, if determined adversely, materially and adversely affect the Company;

>> (ii) notification in writing of the existence of any default under any material agreement or instrument to which the Company is a party or by which any of their assets are bound;

>> (iii) copies of all reports prepared for or delivered to the management of the Company by its or their accountants; and

>> (iv) upon request, any other routinely collected financial or other information available to management of the Company.[6]

Arencibia invoices its customers using a complex framework that calculates

(among other things) the amount of industrial gas recycled through the Company's

---

[6] JX 54 § 21.

systems.[7]   Arencibia contracts with its customers to recycle gas at an efficiency threshold that, if not met, entitles customers to a discount.[8]  Beginning in early 2023, Plaintiff undertook an approximately eighteen-month investigation into alleged customer invoicing anomalies and billing fraud, purportedly committed at the direction of Arencibia's Chief Executive Officer, Brent Frissora.[9]  Plaintiff contends that, through his investigation, he learned that Frissora had directed manual adjustments to invoices in order to "falsify the recovery efficiency . . . to ensure the Company always appeared to meet [its] [e]fficiency [g]uarantee[.]"[10]   Plaintiff further contends that his investigation revealed at least seven other "overbilling tactic[s]" and "manual loopholes" that enabled Arencibia to improperly manipulate data in a way that "maximizes billing while minimizing risk."[11]

According to Plaintiff, after he attempted to disclose anomalies and was prevented from interacting with the Company's auditor,[12] Plaintiff "continued to dig deeper" and "ramped up his investigation in earnest[,]" "reviewing the code base

---

[7] *See* Pl.'s Opening Pre-Trial Br. [hereinafter POB] 6–18, Dkt. 55; *id.* 53–55.

[8] *Id.* 6, 48.

[9] *Id.* 53–55.

[10] *Id.* 49, 54.

[11] *See id.* 19–42 (describing in detail the purported "tactics" and "loopholes" Plaintiff uncovered through his investigation).

[12] *Id.* 2, 20–21.

with a more fine-toothed comb . . . ."[13]  Plaintiff contends that when he "raised the[se] issue[s] with Frissora, made clear to Frissora that his billing fraud was a violation of law, and further that [Plaintiff] would not participate in it," Plaintiff was terminated from his positions at the Company.[14]  Within days of his termination, Plaintiff had prepared a ninety-two-page derivative complaint laying out the findings of his investigation.[15]

On September 30, 2024, Plaintiff, through counsel, sent Frissora a copy of a demand to inspect Arencibia's books and records.[16]  On October 7, Arencibia responded by letter, notifying Plaintiff that the Board had formed a special committee to oversee an internal investigation into Plaintiff's allegations.[17]

One week later, on October 14, Plaintiff, through counsel, served a fifty-nine-page Demand to Inspect Books and Records of the Company (the "Demand"), for the stated purposes of investigating "(i) fraudulent and unlawful conduct on the part of management; (ii) potential breaches of fiduciary duty by members of the . . .

---

[13] *Id.* 53–54.

[14] *Id.* 55.  Arencibia denies this, asserting that Plaintiff was terminated due to "unprofessional" and "inappropriate" conduct.  *See* Def.'s Corrected Pre-Trial Answering Br. [hereinafter DAB] 16, Dkt. 58.

[15] *See* JX 144.

[16] *See* JX 147.

[17] *See* JX 148.

[Board] and (iii) whether to bring a lawsuit or take other appropriate action."[18]  The Demand was not accompanied by a power of attorney.  The Demand seeks the following nine categories of documents:

1. All Board-level materials concerning the audit function and financial oversight of the Company;

2. All documents and communications (including without limitation e-mail, and messaging platforms including text, Slack, Signal) concerning the calculation of invoices;

3. All documents and communications (including without limitation e-mail, and messaging platforms including text, Slack, Signal) concerning customer invoices, including all final and draft correspondence or materials transmitted to the Company's customers;

4. All documents and communications (including without limitation e-mail, and messaging platforms including text, Slack, Signal) concerning the Company's annual financial audit, including all final and draft correspondence or materials transmitted to the Company's Auditor;

5. All documents and communications (including without limitation e-mail, and messaging platforms including text, Slack, Signal) concerning the Company's Creditor or Prospective Creditors, including all final and draft correspondence or materials transmitted to the Company's Creditor or Prospective Creditors;

6. All contracts with customers;

7. All software code, repositories, change records and supporting files and documentation concerning the calculation of customer invoices;

---

[18] JX 147 at 2.

8. All compliance, financial controls, accounting procedures, policy documents and records concerning the calculation of customer invoices;

9. Any materials created, modified, or provided to the Board or any committee thereof concerning the independence or non-independence of any director, including any disclosure questionnaires and any books and records relating to the appointment of directors to serve on any committee of the Board.[19]

Arencibia agreed to produce formal Board-level materials only, subject to a confidentiality agreement. On November 15, Plaintiff initiated this action through the filing of a Verified Complaint for Inspection of Books and Records.[20] The Court held a one-day paper trial on March 7, 2025.

## II. ANALYSIS

Plaintiff seeks books and records under Section 21 of the Unitholders' Agreement and Section 18-305 of the LLC Act.

### A. Plaintiff's Requests For Informal Materials Under The Unitholders' Agreement Are Not Reasonable.

Plaintiff first seeks books and records under Section 21 of the Unitholders' Agreement. Section 21 entitles a unitholder "to receive regular and suitable business (e.g. sales, marketing and technology), financial and other information reasonably

---

[19] JX 153 at 1, 58–59.

[20] Verified Compl. for Inspection of Books and Records, Dkt. 1.

appropriate to monitor and manage its ownership interests in the Company and such other information as it may reasonably request from time to time."[21]  The parties agree that the Unitholders' Agreement does not impose form-and-manner requirements or require a proper purpose for seeking records.  The sole issue is whether the Demand seeks "information reasonably appropriate to monitor and manage [Plaintiff's] ownership interests in the Company" or "other information . . . reasonably request[ed,]" including "routinely collected financial or other information available to management of the Company."[22]

To satisfy the Demand, Arencibia has agreed to produce, subject to a confidentiality order,[23] all formal Board-level materials "concerning Arencibia's audit function and financial oversight of the Company" and "practices related to customer invoices and its current written policy and procedure documents related to

---

[21] JX 54 § 21.

[22] *Id.*

[23] Plaintiff does not "dispute . . . that a confidentiality agreement is appropriate" and "has no objection to entering into a customary confidentiality agreement."  Pl.' Reply Pre-Trial Br. [hereinafter PRB] 33, Dkt. 66.

finance, accounting, and customer invoice functions."[24]  The parties are directed to meet and confer on a form of confidentiality order to govern that production.[25]

The remaining categories of information requested in the Demand are not "reasonably appropriate to monitor and manage [Plaintiff's] ownership interests in the Company" or otherwise "reasonably request[ed]."  The reasonableness of Plaintiff's information requests "must be evaluated in the context of the unique nature of the facts and circumstances" the parties face.  *NAMA Hldgs., LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 420 (Del. Ch. 2007), *aff'd*, 945 A.2d 594 (Del. 2008).  While a director and employee of Arencibia, Plaintiff personally undertook a months-long investigation, compiling the results in a ninety-page draft derivative complaint and fifty-nine-page Demand.[26]  Those documents, in combination with Plaintiff's pleadings, briefing, and presentation at trial, reflect Plaintiff's detailed knowledge of the wrongdoing alleged.  Plaintiff has failed to

---

[24] DAB 47–52; Tr. 51–52.  Arencibia also represents that documents responsive to Request 9 do not exist.  *See* Tr. 52; DAB 53 n. 12.

[25] Arencibia separately argues that Plaintiff is not entitled to books and records under Section 21 of the Unitholders' Agreement because in December 2024, Plaintiff's membership interests were diluted to approximately 4.8%.  *See* JX 181; JX 54 § 21(a) (conferring information rights "[f]or so long as any Unitholder owns at least five percent (5%) of the then-outstanding Units"); DAB 30.  At trial, however, Arencibia confirmed its willingness to produce the formal Board-level materials identified herein notwithstanding that argument.  *See* Tr. 46.  This letter opinion therefore does not resolve that argument.

[26] *See* JX 144; JX 147; *see also, e.g.*, PAB 6–53; Tr. 4–19; *id.* 21–22.

demonstrate that his requests for additional informal materials—including email, text, Slack, and Signal communications, as well as contracts and software code—are reasonable in light of the extensive information already in his possession. Instead, without explaining what is missing, he offers only conclusory assertions that informal materials are "necessary . . . to gain a complete picture into," and "expose the full scope of," the purported wrongdoing.[27] That rhetoric is insufficient to meet Plaintiff's burden. Nor has Plaintiff shown that the informal materials he seeks are "routinely collected" or "available to management," or otherwise fall within the categories enumerated in Section 21.[28] Plaintiff's demand for those informal materials is, therefore, denied.

---

[27] Aff. of Thomas J. Scaramellino ¶ 9, Dkt. 55; *see also* POB 66 (asserting in conclusory fashion that it is "fair and proper" to order the production of informal materials); PRB 25 (conceding that "[i]n most circumstances," the informal material sought in the Demand "would be far too granular[,]" but arguing that here, Plaintiff "has provided an extensive basis to suspect that Frissora is committing widespread misconduct"); Tr. 22 (acknowledging that Plaintiff "knows a lot more than maybe any other books and records demander I have seen" and is "as intimately familiar as anybody probably," but asserting "he has not come close to uncovering what Mr. Frissora alluded to with the five or six different ways").

[28] Plaintiff asserts, without citation, that his own "affidavit and testimony establish that the information is available to management of the Company and routinely collected[,]" but they do not. PRB 18.

> **B.** **The Demand Does Not Satisfy The Statutory Form-And-Manner Requirements.**

Plaintiff separately seeks books and records under Section 18-305 of the LLC Act. Even assuming Section 21 of the Unitholders' Agreement did not modify Plaintiff's inspection rights,[29] Plaintiff is not entitled to books and records under Section 18-305 because the Demand does not satisfy the statutory form-and-manner requirements.

Section 18-305's "form-and-manner requirements are not onerous, but they are strictly enforced." *Floreani v. FloSports, Inc.*, 2024 WL 4637689, at *2 (Del. Ch. Oct. 31, 2024). The statute requires that, "[i]n every instance where an attorney . . . shall be the person who seeks the right to obtain the information described in subsection (a) of this section, the demand shall be accompanied by a power of attorney or such other writing which authorizes the attorney . . . to so act on behalf of the member." 6 *Del. C.* § 18-305(e). A demand "sent by counsel but not accompanied by a power of attorney" is "clearly deficient." *Floreani*, 2024 WL

---

[29] *But see Apogee Invs., Inc. v. Summit Equities LLC*, 2017 WL 4269013, at *2 n.12 (Del. Ch. Sept. 22, 2017) ("Section 18-305 governs books and records demand[s] unless an LLC agreement limits or otherwise modifies inspection rights."); *see also Leistner v. Red Mud Enters. LLC*, C.A. No. 2023-0503-SEM, at 26–27 (Del. Ch. Sept. 7, 2023) (TRANSCRIPT) (explaining that the Court "must first look to the LLC Agreement to determine the inspection rights afforded to members of the Company; only if the LLC Agreement is silent or incorporates the LLC Act will [the Court] turn back to the LLC Act to determine the rights afforded to members").

4637689, at \*2; *see also Mattes v. Checkers Drive-In Rests., Inc.*, 2000 WL 1800126, at \*1–2 (Del. Ch. Nov. 15, 2000) (dismissing a books and records action where a demand sent by counsel was not accompanied by a power of attorney).

Plaintiff contends that, although counsel served the Demand, a power of attorney was not required because Plaintiff, not counsel, "is the person who can properly interpret and digest the information."[30]  That argument fails under the plain language of Section 18-305, which is not limited to instances where an attorney will *review* the books and records sought in the demand.  Section 18-305 requires a power of attorney "[i]n every instance where an attorney . . . shall be the person who *seeks* the right to obtain the information" in the demand.  6 *Del. C.* § 18-305 (emphasis added).  That makes sense.  Like the requirement for a beneficial owner to attach proof of stock ownership, requiring counsel sending a demand to attach a power of attorney protects an entity from responding to unauthorized demands.  *See Cent. Laborers Pension Fund v. News Corp.*, 45 A.3d 139, 144–46 (Del. 2012) (explaining that the statutory form-and-manner requirements are intended to "protect[] corporations from improper demands" (quoting *Seinfeld v. Verizon Commc'ns Inc.*, 873 A.2d 316, 317–18 (Del. Ch. 2005))).

---

[30] POB 59.

Plaintiff also suggests that "[i]f the Court nevertheless finds a power of attorney necessary, [Plaintiff] is willing to provide one . . . ."[31]  That argument also fails because "a defective demand's procedural deficiencies cannot be cured by later submissions."  *Martinez v. GPB Cap. Hldgs., LLC*, 2020 WL 3054001, at *8 (Del. Ch. June 9, 2020).  Because the Demand did not comply with the statutory form-and-manner requirements when it was served, Plaintiff's request to inspect books and records under Section 18-305 is denied.

## III.  CONCLUSION

Judgment will be entered as described above.  The parties are directed to submit a proposed form of order to implement this letter opinion.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

cc:   All counsel of record (by File & ServeXpress)

---

[31] *Id.*